## C. I. T. CORPORATION v. LYTLE.
### No. 5678.

Court of Appeal of Louisiana.
Second Circuit.

June 30, 1938.

Rehearing Denied Nov. 4, 1938.

W. H. Scheen, of Shreveport, for appellant.

Coleman & Morgan, of Shreveport, for appellee. ·

HAMITER, Judge.

The Ethridge-Atkins Corporation of Shreveport, Louisiana, sold to Mrs. A. M. Lytle, under date of October 10, 1934, a Dodge sedan automobile. The sale was on terms of cash and credit. The purchaser, who at that time was married and living with her husband, gave her promissory note to evidence the credit portion of the price and, as security, executed an act which recited the reservation of a vendor's lien and the creation of a chattel mortgage on the conveyed property in favor of the seller. The husband did not sign either of the instruments, and clearly it was the intention of Mrs. Lytle to bind herself personally for the obligation.

· The note was transferred in the regular course of business to the C. I. T. Corpora-tion, and thereafter the latter instituted this suit against Mrs. Lytle praying for judgment against her for the unpaid balance due thereon, together with interest and attorney's fees, and for recognition of its vendor's lien and chattel mortgage on the automobile. A writ of sequestration issued in connection with and as a part of the proceeding.

Defendant tendered exceptions of no cause and no right of action to the petition. They were referred to the merits.

The answer reiterated and reurged the mentioned exceptions, and averred no liability under the note on defendant's part.

After trial there was judgment in plaintiff's favor against Mrs. Lytle for the amount prayed for, and ordering the maintenance of the writ of sequestration with recognition of the vendor's lien and chattel mortgage on the automobile.

Defendant appealed suspensively.

The record propounds the following legal question for consideration: Can a married woman be held personally and individually responsible on a promissory note executed and given by her in the purchase of property that became a part of the community existing between her and her husband?

The emancipation of married women of Louisiana from their various legal incapacities was commenced through the enactment of Act No. 94 of 1916. "The existence of these incapacities in the Louisiana Civil Code may be traced to the Code Napoleon, which derived the doctrine from Germanic sources". 8 Tulane Law Review, 106.

Following the passage of that statute, and relating to the rights of married women to contract, were Act No. 244 of 1918 and Act No. 219 of 1920.

Further relief from their legal disabilities was furnished by Act No. 132 of 1926. As stated by the Supreme Court in Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556, 557, "This act enlarges the rights of married women, so as not only to permit them to bind their separate property and themselves personally for the debts of third persons, without the authorization of their husbands, but to bind themselves and their paraphernal property even for the debts of their husbands."

Section 1 of the last mentioned statute provides: "That a married woman, whether a resident of this State or not, shall be competent to contract debts, purchase, sell

116

and mortgage and to bind and obligate herself personally and with reference to her separate and paraphernal property; to appear in court and to sue and be sued; to sell, alienate or otherwise dispose and to mortgage and pledge or otherwise encumber her separate and paraphernal property for the benefit of herself, her husband or any other person, and to bind and obligate herself personally or as surety for her husband or any other person."

With reference to the quoted section of the Act of 1926, it is stated in the Mathews Bros. Case, supra, that: "It is obvious from section 1 of this act that a married woman has the right, not only to bind herself and her separate property for her benefit or for the benefit of a third person, without the authorization of her husband, but also to bind herself and her separate property for his benefit. As she may bind herself for the benefit of her husband, who is by law the head and master of the community, and responsible for its debts, by reasonable implication she may bind herself for a debt of the community, for such a debt is the husband's debt."

The last statutory enactment on the subject in question, and which was in force and effect when the obligation in the instant controversy was created, is Act No. 283 of 1928. This statute does not appear to be restrictive of the provisions of the 1926 act, which it supercedes, but, as expressed by Chief Justice O'Niell in Shell Petroleum Corp'n v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, "uses stronger and plainer language—and possibly goes further—in the emancipating of married women". [page 792] Section 3 of the 1928 enactment provides: "That married women shall have capacity to bind themselves personally in any form, or to dispose of or hypothecate their property, by way of security or otherwise, for the benefit of their husbands or of the community between them and their husbands."

Plaintiff in the case of Howard v. Cardella et ux., 171 La. 921, 132 So. 501, held two notes signed jointly and severally by defendants therein, who were husband and wife, and secured by a mortgage on property belonging to the community that existed between the spouses. The wife resisted the suit brought on the notes on the ground that the debt sued on was that of the husband and of the community, and that she could not be held personally responsible therefor. The Supreme Court decreed that

in view of the express terms of Act No. 132 of 1926, and Act No. 283 of 1928, plaintiff was entitled to a personal judgment against her. The Bernius Case, supra, was cited and quoted from approvingly in the court's opinion.

The case of United Life & Accident Ins. Co. v. Haley et ux., 178 La. 63, 150 So. 833, is authority for the proposition that under the provisions of Act No. 132 of 1926, a married woman may legally bind herself personally with her husband for the payment of a community debt.

Phraseology used in the opinion of the Shell Petroleum Corp'n Case, supra, decided in 1936, is: "It has been decided, at least three times, that a married woman may obligate herself and subject her separate property to liability for an obligation of her husband or of the community". The decisions referred to are: Mathews Bros. v. Bernius; Howard v. Cardella et ux., and United Life & Accident Ins. Co. v. Haley et ux., all supra.

In view of the statutory authority and jurisprudence above discussed, we must hold that the propounded question should be answered in the affirmative and that defendant was correctly held responsible for the obligation on which this suit is founded.

The judgment is affirmed.